# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

BESSIE R. KLINE for
JACK R. KLINE, Deceased,

      Plaintiff,

v.                                                                                            Civil No. 00-511 LH/WWD

LARRY G. MASSANARI,[1]
Acting Commissioner of Social Security,

      Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

    1.  This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed September 15, 2000 **[docket # 8]**.[2]  The Commissioner denied Plaintiff's request for Social Security Disability Insurance benefits.  Plaintiff filed the claim on behalf of her husband, Jack Kline, who died on November 23, 1997.  His alleged disability onset date is November 1, 1996.

    2.  The Commissioner's Administrative Law Judge ("ALJ") denied Plaintiff's application for benefits, finding that the deceased had engaged in post-onset substantial gainful activity, from

---

[1] President Bush designated Larry G. Massanari as Acting Commissioner of Social Security, effective March 29, 2001**.**  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Larry G. Massanari should be substituted for Kenneth S. Apfel as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The motion was ready for ruling on January 17, 2001.

the date of onset until his death. The ALJ also determined that Mr. Kline did not have a severe impairment. The Appeals Council denied Plaintiff's request for review, thus the ALJ's decision became the final decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g). Ms. Kline asserts that her husband was unable to work from November 1, 1996 to the date of the car accident in which he died, because of arteriosclerotic heart disease, depression, and hypertension.

3. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

4. At the first four levels of the evaluation, the claimant must show: (1) that he or she is not working; (2) that he or she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he or she is unable to perform work done in the past. At the fifth step, the Commissioner must produce evidence regarding the claimant's ability to perform other work. Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

5. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) the ALJ erred in finding that Kline's work activity was substantial gainful employment; (2) the ALJ erred in finding that Kline did not have a severe impairment; (3) the ALJ erred in according little weight to the testimony of lay witnesses; (4) the ALJ erred in not re-contacting Dr. Graham;

and (5) the ALJ erred in not having a medical advisor to give an opinion on the onset of Kline's disability.

6. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson at 1486 (citing 42 U.S.C. §423 (d)(1)(A)). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. § 404.1520(a - f). The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

**First Alleged Error**

7. Plaintiff alleges that the ALJ erred in finding that Kline's work activity was substantial gainful employment. The first step determines whether the claimant is engaged in "substantial gainful activity." Bowen v. City of New York, 476 U.S. 467, 470-71 (1986). A claimant who is actually engaged in substantial gainful activity cannot be found disabled, regardless of the severity of his impairments. Fowler v.Bowen, 876 F.2d 1451, 1453 (10th Cir. 1989).

8. Mr. Kline was a self-employed insurance agent who had an income of approximately $1,000.00 a month after the alleged onset date of his disability, Tr. at 38. It is not disputed that this amount is considered substantial gainful activity ("SGA") under the guidelines. See 20 C.F.R. § 404.1573(a). Plaintiff contends that because this income was from renewal of old insurance policies and because Mr. Kline was no longer actually servicing the policies, he cannot be considered to have engaged in SGA.

9. Plaintiff is correct that SSR 83-34[3] provides definitive guidance for resolving this issue. The ruling acknowledges that "self-employment income alone is not a reliable factor in determining SGA," since it is influenced by other factors such as the services of other people and market conditions. <u>SSR 83-34</u> ("Introduction"). It then sets out a three-part test which must be considered in assessing work activity and SGA.

10. The first part of the test is based on significant services and substantial income and states:

> The individual's work activity is SGA if he or she renders services that are significant to the operation of the business and if he or she receives a substantial income from the business.

11. Plaintiff relies on the fact that although Mr. Kline's income was above the guideline amount, he worked only two hours per week at his business and therefore does not meet the requirements of the first test. However, in focusing on the amount of time Mr. Kline spent working at his business post-onset, Plaintiff relied on that part of the ruling which applies to businesses that involve the services of more than one individual:

> a sole owner or partner will be found to be rendering significant services if he or she contributes more than half the total time required for management of business, or renders management services for more than 45 hours a month regardless of the total management time required by the business.

<u>See</u> SSR 83-34 ("Evaluation of Work Activity By Self-Employed Persons," Part A(1)(a)).

12. However, the ruling further specifies that: "[t]he services of an individual in a one-person business are necessarily 'significant.'" Part A(1)(a). According to this language, Plaintiff should not consider the number of hours of services Mr. Kline expended in his business, since that

---

[3] The ruling is erroneously referred to as SSR 83-84 in Plaintiff's briefs.

factor appears to apply only to businesses involving the services of more than one individual, and it is not disputed that Mr. Kline's business was a sole proprietorship even though Mr. Kline had a business partner who shared office space.[4]  The language of the provision appears to state that the first prong of test one is met once it is established that a claimant operates a one-person business.

13.   The SGA analysis continues under the next two tests "[w]here income is not substantial." SSR 83-34 (Part A(1)(a)).  Since Mr. Kline's situation has been found to satisfy both parts of test one, significant services *and* substantial income, it would seems that the inquiry into his SGA stops here, at the end of test one because  Mr. Kline satisfies both parts of test one for determining SGA under the express language of SSR 83-34.

14.   However, the source of Mr. Kline's income -- renewal commissions for insurance policies -- presents an interesting angle to the analysis.  It could be argued that Mr. Kline was not actually engaged in SGA, but was merely receiving income from substantial gainful activities he had engaged in *before* the onset of disability.  Thus, his income could be described as merely reflecting the hours he worked pre-onset, rather than hours he engaged in SGA during the period he alleged disability.  Further, although "work may be substantial even if it is done on a part-time basis," § 404.1572(a), the two hours a week Mr. Kline worked post-onset may be characterized as having little connection to the income he was earning through residuals during that period -- income which more accurately might have been "earned" through hours expended *before* disability was alleged to have started.

15.   Thus, although Mr. Kline technically meets the two prongs of test one for a one-

---

[4]  Plaintiff does not dispute this issue in the briefs, but at the hearing, Mr. Krake, Mr. Kline's business partner, stated that he did "most of" Mr. Kline's insurance work. Tr. at 33.

person businesses, that result strikes one as spurious, since it does not seem to be a valid measure of either "significant services" or "substantial income," and therefore not a valid indicator of whether an individual is impaired enough to be precluded from working.  The ALJ informed the parties at the hearing that if he found that Mr. Kline made more than $500.00 a month, he need not continue with the sequential analysis.  Tr. at 38; see Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (if determination can be made at any step, evaluation under subsequent steps is not necessary).

16. The ALJ determined that Mr. Kline had engaged in post-onset SGA from the date of alleged onset of disability until his death.  Tr. at 19.  However, this finding was based on Mr. Kline's income without determining whether his income was earned through residuals.  The ALJ stated: "Mrs. Kline argues that Mr. Kline's income consisted mostly of residuals; but she has failed to submit proof of this contention."  Tr. at 18.  It is unclear whether, had the record included evidence that the income resulted solely or mostly through residuals, the ALJ would still have found that Mr. Kline engaged in SGA during the relevant period.

17. This question needs to be answered.  The case should be remanded to require Ms. Kline to provide documentation that supports the contention that Mr. Kline's income was from residuals, and documentation which clarifies how much of his income was a result of servicing new policies.[5]

18. If Mr. Kline was actually earning above the guideline amount through his minimal

---

[5] Mr. Kline's income was stated to be "largely from residuals."  Tr. at 100.  This does not answer whether his servicing of new accounts during the period he was allegedly disabled resulted in income above the guidelines.  20 C.F.R. § 404.1574.  The ALJ noted that Mr. Kline was still on books until the day he died.

work hours during the relevant period, then the sequential analysis ends at step one. If he was not, then either the analysis should continue through steps two through five, or the ALJ must determine, based on the regulations and social security rulings, whether residual income is considered "income" for purposes of the SGA analysis, even if the amount has no connection to "servicing" or work hours provided by the claimant.

19. The ALJ alternately found that Plaintiff had failed to meet her burden of proving that Mr. Kline was unable to perform any SGA for a continuous period of twelve months. Plaintiff's next two allegations of error relate to these findings.

**Second Alleged Error**

20. Plaintiff alleges that the ALJ erred in finding that Kline did not have a severe impairment. At step two, the ALJ is to determine whether the claimant has an "impairment or combination of impairments which significantly limits [his] ... ability to do basic work activities." Hinkle v. Apfel, 132 F.3d 1349 (10th Cir. 1997); 20 C.F.R. § 404.1520(c). This step requires a "de minimis" showing of impairment. See Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir.1997) (citation omitted). However, the claimant must show more than the mere presence of a condition or ailment. Id.

21. At the hearing, the ALJ noted the paucity of medical records, and repeatedly advised the Plaintiff of the need for medical evidence, given that a medical standard governed the determination of whether Mr. Kline was disabled. Tr. at 35. At the time of the hearing, the record contained a medical report dated May 2, 1989, and nothing more until the date of his death. The record was supplemented after the hearing.

22. Mr. Kline had a heart attack in 1984. Tr. at 38, 111-14. Witnesses stated at the

7

hearing that Mr. Kline refused to go to doctors. Tr. at 27. Testimony was also given that although the car accident precipitated Mr. Kline's death, the cause of death was ascertained to be a heart attack. Tr. at 36.[6]

23. In support for her position, Plaintiff points to the autopsy results and a letter dated April 13, 2000 by Dr. Graham that Kline was disabled for years before his death. Tr. at 137; Pltff's Ex. A.

24.  The autopsy exam revealed a marked enlargement of the heart due to chronic hypertension and severe hardening of the arteries with evidence of old heart attacks. The right and left coronaries showed severe stenosis (75-100%). Tr. at 137-37. Retrospective diagnosis and subjective testimony can be used to diagnose a physical or mental condition, but this type of evidence alone cannot justify an award of benefits. Flint v. Sullivan, 951 F.2d 264, 267-68 (10th Cir. 1991). There must be evidence of actual disability prior to the expiration of claimant's insured status. Potter v. Sec'y of Health & Hum Serv., 905 F.2d 1346, 1349 (10th Cir. 1990).

25.  Medical notes written shortly after the attack indicates that Mr. Kline had done well since his heart attack, with minimal to no anginal pains. Tr.at 115 (note from 9/13/84). The report noted risk factors for coronary artery disease such as his 30-year history of smoking two to three packs of cigarettes a day, a positive family history and a positive history of hypertension. Id.

26.  In another follow-up treatment note, the examining physician noted that Mr. Kline had no complaints, no chest pain, no shortness of breath, and did not need to use nitroglycerin. Tr. at 127 (dated 8/20/84). While Mr. Kline's hypertension was under control by medication and

---

[6] According to the coroner, Mr. Kline died due to "pathologic arrhythmia damage triggered by chest striking the steering wheel and worsened by the deployment of the car's airbag." Tr. at 89.

he denied having symptoms of a heart condition that would preclude work in 1984, there is medical evidence in the record which supports the clinical findings of the autopsy results, from his treating physician and the testimony of lay witnesses. This evidence is sufficient to warrant a remand for further findings.

27. Plaintiff refused to see doctors and refused to follow through with suggested diagnostic procedures. In 1984, he considered undergoing a cardiac catheterization, then changed his mind. Tr. at 116. A treating physician may provide a retrospective diagnosis of a claimant's condition. See Potter v. Sec'y of Health & Hum Serv., 905 F.2d 1346, 1348 (10th Cir. 1990). However, the relevant analysis is whether the claimant was actually disabled prior to the expiration of her insured status. Id. at 1349.

28. In a letter dated January 13, 1999, Dr. Graham, Mr. Kline's treating physician, stated that Mr. Kline had a myocardial infarction in 1984 and a history of hypertension. He listed the several medications Mr. Kline was taking. Tr. at 144. He noted that Mr. Kline continued to smoke one pack of cigarettes daily yet still "denied having any chest pain, palpitations of the heart, or having any symptoms referable to the gastrointestinal or genito-urinary systems." Mr. Kline's blood pressure on that visit was 130/90. He presented on that visit with complaints of a cold. Id.

29. Dr. Graham's letter also indicated that he first treated Mr. Kline in September 1989, and his last visit was in November 1995, a year before Mr. Kline's alleged disability. Tr. at 144. Records could not be found for visits to Dr. Graham between 1989 and 1995 except for prescription refills. Tr. at 18. There is a record of a treadmill test in April 1989, which was positive. Tr. at 100.

30.  Despite the lack of medical documentation generated during the relevant period of alleged disability, the autopsy results and testimony of lay witnesses paint a more complete picture of Mr. Kline.  The ALJ noted that symptoms cannot be the basis for the finding of disability and that medical signs and laboratory findings were required which demonstrated the existence of a "medically determinable impairment."  Tr. at 19.

31.  However, I find that the record contained ample evidence of a such an impairment, through treatment notes following Mr. Kline's heart attack, through Dr. Graham's letter attesting to his treatment of this patient, and through the autopsy report.  See Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983) (substantiality of the evidence is based upon the record taken as a whole).

32.  I note that the ALJ stated in his decision that "[t]here can be no question that Mr. Kline had a high risk heart condition at the time of his death in November 1997."  The ALJ acknowledged the severity of the condition by reference to the autopsy report.  The ALJ did not consider that the autopsy report was closer in time proximity to Mr. Kline's alleged onset of disability than the medical reports following his heart attack which found him to be largely asymptomatic.

33.  Therefore, I find that the ALJ erred in finding that Mr. Kline did not have a severe impairment.  The case should be remanded to proceed through the subsequent steps of the sequential analysis.

**Third Alleged Error**

34.  Plaintiff contends that the ALJ erred in according little weight to the testimony of lay witnesses.  A claimant's statements about symptoms will not alone establish disability.  20 C.F.R.

§ 404.1529.  I have already determined that the record as a whole contains sufficient evidence of a medically determinable impairment.

35.  At the hearing, Ms. Kline testified about her husband's symptoms during the alleged period of disability.  Mr. Kline's business partner, Mr. Krake, and Mr. Tharp, an attorney and long-time friend who knew Mr. Kline for about 10 years, also testified.

36.  There was testimony at the hearing concerning the decline in Mr. Kline's vitality and health.  Tr. at 33.  He was observed to have shortness of breath, lack of energy and attention span, and poor skin color.  Tr. at 36.  The testimony was consistent in that Mr. Kline experienced a drop in energy in the last two years of his life.  Tr at 34.  He lacked the energy to stay for a two-hour lodge meeting.  Tr. at 35.  His business suffered.  He would not show up for service calls for his clients, and Mr. Krake would get calls from these individuals wanting to know where Mr. Kline was.  Tr. at 33.

37.  Mr. Kline was still earning income because of residuals from renewals of insurance policies, but he stopped coming into the office on a regular basis.  Tr. at 42.  He would spend "maybe an hour, maybe less" in the office per week.  Tr. at 33.  Despite his symptoms, Mr. Kline refused to see his doctor except to get his medications refilled.  Tr. at 31-32.

38.  Ms. Kline testified that during 1996 and 1997, Mr. Kline would sometimes remain in bed and not leave the house.  Tr. at 43.  She stated that he lost all interest in business in the year before he died.  Tr. at 30.  During the last six months or so before his death, her husband "just couldn't do anything around the house."  Tr. at 44.  The couple did not have marital relations since 1994, a fact which she attributed to his heart condition.  Tr. at 45.

39. The record also contains the statement of Harold Burris,[7] that Mr. Kline steadily deteriorated by October 1996 through loss of energy and oxygen so that he could no longer function as an insurance underwriter. Tr. at 99.

40. Lay witness testimony by friends, neighbors, and family members in a position to observe the claimant's symptoms is competent evidence. See Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir.1987); Bilby v. Schwieker, 762 F.2d 716, 719 n. 3 (9th Cir.1985) (disregard of lay witness testimony violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work); 20 C.F.R. § 404.1513(e)(2).

41. On the other hand, the ALJ must determine the weight to accord such testimony. See Harrell v. Bowen, 862 F.2d 471, 482 (5th Cir. 1988) (affirming court's rejection of lay witness-relatives' testimony supporting claimant's allegations of pain)(citing Fitzsimmons v. Mathews, 647 F.2d 862, 864 (8th Cir. 1981) (court finding credibility of lay witnesses was diminished by their close relationship to plaintiff).

42. On remand, the ALJ should consider the lay witness testimony in light of all the medical evidence, including the autopsy report, and determine how much weight to accord those statements while following the steps in the sequential evaluation.

**Fourth Alleged Error (including admission of Dr. Graham's letter as new evidence)**

43. Plaintiff alleges that the ALJ erred in not re-contacting Dr. Graham. I agree with Defendant that Dr. Graham's letter does not qualify as new evidence. Evidence is "new" if it is

---

[7] According to the statement, Mr. Burris was the appointed representative of Ms. Kline. Tr. at 99.

not duplicative or cumulative. 20 C.F.R. § 404.970(b). Evidence is "material" to the determination of disability "if there is a reasonable possibility that "[it] would have changed the outcome." Remand would be appropriate if the new evidence would have changed the Commissioner's decision, had it been before him. Hargis v. Sullivan, 945 F.2d 1482, 1493 (10th Cir. 1991).

44. Dr. Graham's letter is not new evidence because it essentially repeats the information in the earlier January 1999 letter, with the additional statement that Mr. Kline was disabled from any employment for years before his death. The function of determination of disability is reserved to the Commissioner, not a physician. See 20 C.F.R. § 404.1527(e)(1) (statement by a medical source that claimant is "disabled" or "unable to work" does not mean that the Commissioner will determine claimant is disabled). Therefore, this statement is insufficient to change the Commissioner's decision.

45. However, Plaintiff asserts that attachment of this letter as an exhibit was not done for the purpose of submitting new evidence, but rather, to show that the ALJ should have contacted Dr. Graham. Given the fact that Dr. Graham was Mr. Kline's treating physician, the dearth of treatment notes in the record, and the wide range of information from the autopsy report as compared to early treatment, I find that the ALJ should have made an attempt to re-contact Dr. Graham as a witness.

**Fifth Alleged Error**

46. Plaintiff alleges that the ALJ erred in not having a medical advisor to give an opinion on the onset of Kline's disability. Plaintiff contends that a question remains regarding when Mr. Kline's disability began, assuming that his autopsy report shows that his condition met a listed

impairment.[8]

47.     The date alleged by the individual should be used to establish the onset date if the alleged date is consistent with all the evidence available. Ott v. Chater, 899 F.Supp. 550, 552-53 (D.Kan. 1995). Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence. SSR 83-20.

48.     There was no need to consult a medical expert based on the ALJ's finding that the inquiry stopped at step one because Mr. Kline did not have a severe impairment.  However, on remand, if a question remains concerning Mr. Kline's onset date, and Dr. Graham's participation is insufficient to resolve the issue, then the ALJ should contact a medical advisor.

49.     In sum, I find that (1) the ALJ's finding that Kline's work activity was substantial gainful employment was premature and requires further fact-finding; (2) the ALJ erred in finding that Kline did not have a severe impairment; (3) the ALJ erred in according little weight to the testimony of lay witnesses in light of the entire record and (4) the ALJ erred in not re-contacting Dr. Graham.  I also find that a medical advisor may be necessary on remand to give an opinion on the onset of Kline's disability.

## Recommendation

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing **[docket # 8]**, be GRANTED and that this cause be remanded to the Commissioner for proceedings consistent

---

[8] It appears that Mr. Kline may meet part of the listing requirements for ischemic heart disease, see 20 C.F.R. Pt.404, Subpt.P, App1, § 4.04(C)(1), given that the autopsy report shows a greater narrowing of the coronary arteries than is listed in the regulations.  It is not clear whether Mr. Kline's impairment would meet Part (2) of the listing requirement ("[r]esulting in marked limitation of physical activity. . . .").  The question should be answered on remand when the ALJ considers step three in the sequential evaluation.

with this opinion.  The Commissioner's ALJ should conduct further inquiry into the source of Mr. Kline's income during the alleged period of disability and continue with the sequential evaluation in this case if it is determined that Mr. Kline did not engage in SGA during the relevant period. The evaluation should continue from step two and include an assessment of lay witness testimony in light of the whole record, including the autopsy report, re-contact Dr. Graham, and if necessary, consult a medical advisor if there remains a question regarding date of onset.   Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE